**ORIGINAL**

TAMARA BEATTY PETERSON (Nevada Bar No. 5218)
tpeterson@bhfs.com
LAURA E. BIELINSKI (Nevada Bar No. 10516)
lbielinski@bhfs.com
JOANNA M. MYERS (Nevada Bar No. 12048)
jmyers@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:   (702) 382-2101
Facsimile:    (702) 382-8135

Attorneys for Plaintiff
BOYD GAMING CORPORATION

2:12-cv-00016-JCM -CWH

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BOYD GAMING CORPORATION, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KING ZULU, LLC, an unknown entity doing business in Saint Kitts and Nevis,<br><br>Defendant. | Case No.<br><br>**FILED UNDER SEAL (MOTION TO TEMPORARILY FILE UNDER SEAL FILED CONCURRENTLY HEREWITH)**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(1) Cybersquatting under 15 U.S.C. § 1125(d)<br><br>(2) Trademark Infringement under 15 U.S.C. § 1114<br><br>(3) Unfair Competition under 15 U.S.C. § 1125(a)<br><br>(4) Trademark Dilution under 15 U.S.C. § 1125(c)<br><br>(5) Common Law Trademark Infringement<br><br>(6) Common Law Intentional Interference with Prospective Economic Advantage |

**ORIGINAL**

TAMARA BEATTY PETERSON (Nevada Bar No. 5218)
tpeterson@bhfs.com
LAURA E. BIELINSKI (Nevada Bar No. 10516)
lbielinski@bhfs.com
JOANNA M. MYERS (Nevada Bar No. 12048)
jmyers@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:   (702) 382-2101
Facsimile:    (702) 382-8135

Attorneys for Plaintiff
BOYD GAMING CORPORATION

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BOYD GAMING CORPORATION, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KING ZULU, LLC, an unknown entity doing business in Saint Kitts and Nevis,<br><br>Defendant. | Case No.<br><br>**FILED UNDER SEAL (MOTION TO TEMPORARILY FILE UNDER SEAL FILED CONCURRENTLY HEREWITH)**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(1) Cybersquatting under 15 U.S.C. § 1125(d)<br><br>(2) Trademark Infringement under 15 U.S.C. § 1114<br><br>(3) Unfair Competition under 15 U.S.C. § 1125(a)<br><br>(4) Trademark Dilution under 15 U.S.C. § 1125(c)<br><br>(5) Common Law Trademark Infringement<br><br>(6) Common Law Intentional Interference with Prospective Economic Advantage |

For its complaint against Defendant King Zulu, LLC ("Defendant"), Plaintiff Boyd Gaming Corporation ("Boyd") alleges the following:

## NATURE OF THE CASE

This is an action for cybersquatting, trademark infringement, unfair competition and trademark dilution under federal statutes, with pendent common law claims for trademark

1

infringement and intentional interference with prospective economic advantage. Boyd seeks damages, attorneys' fees, costs, and preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Boyd's common law claims pursuant to 28 U.S.C. § 1367(a).

2. This Court has personal jurisdiction over Defendant based upon the following: (a) Defendant operates a website on the Internet that is accessible to residents of the State of Nevada; (b) Defendant's domain name resolves to a website that is interactive in that it allows Internet users to gamble; and (c) Defendant has committed tortious acts that Defendant knew or should have known would cause injury to a resident in the State of Nevada.

3. Venue is proper in the unofficial Southern Division of the United States District Court for the District of Nevada under 28 U.S.C. §§ 1391(b) and 1391(d).

## PARTIES

4. Plaintiff Boyd Gaming Corporation is a Nevada corporation, which owns and operates resort hotel casinos throughout the United States.

5. Upon information and belief, Defendant King Zulu, LLC, is an entity of unknown origin doing business in Saint Kitts and Nevis which owns an Internet domain name used to operate an online casino accessible to United States residents.

## BOYD'S RIGHTS

6. The Imperial Palace Hotel & Casino ("Imperial Palace") opened in Las Vegas, Nevada in 1979 on the Las Vegas Strip, and has continuously used the trademark IMPERIAL PALACE in connection with its various services, including casino services.

7. Additionally, over the course of its over thirty year tenure as a Las Vegas landmark, the Imperial Palace has continuously used its initials IP ("IP CASINO Mark") in connection with its services, including casino services.

8. In 1997, Boyd's predecessors in interest expanded the Imperial Palace brand to Biloxi, Mississippi, opening the Imperial Palace Hotel and Casino Biloxi.

9. In 2005, the Biloxi property was rebranded the IP Casino Resort & Spa ("IP Casino"), expanding the use and fame of the IP CASINO Mark.

10. Boyd purchased the IP Casino in 2011 and acquired the exclusive rights in the IP CASINO Mark, evidenced by Boyd's federal trademark registrations and applications listed in Paragraph 12(a)-(j) below, including the right to sue for past infringement.

11. In sum, since the Imperial Palace opened in 1979, Boyd and its predecessors in interest have continuously used the IP CASINO Mark in connection with a variety of goods and services, including casino services, at the Imperial Palace and then at the IP Casino.

12. Boyd owns numerous federal trademark registrations and applications incorporating the IP CASINO Mark on the Principal Register of the United States Patent and Trademark Office ("USPTO") in connection with a variety of goods and services:

a) **IP (and Design)** for casino and hotel services (Reg. No. 1,870,042) in International Classes 41 and 42.

b) **IP CASINO** for hotel, restaurant and bar services; entertainment services, namely casino gaming; casino players rewards program, entertainment services in the nature of presenting live musical performances; and spa services (Ser. No. 85,332,474) in International Classes 41, 43, and 44.

c) **IP IMPERIAL PALACE HOTEL & CASINO · LAS VEGAS, NEVADA (and Design)** for casino services, hotel, restaurant, bar, night club, live entertainment, and retail gift store services (Reg. No. 3,830,583) in International Classes 35, 41 and 43;

d) **IP REWARDS** for casino services featuring stored value membership cars for redeeming cash, discounts, and other benefits (Reg. No. 3,622,977) in International Class 41.

e) **IP REWARDS PREFERRED** for casino services featuring stored value membership cars for redeeming cash, discounts, and other benefits (Reg. No. 3,622,987) in International Class 41.

|   |   |
|---|---|
| f) | **IP REWARDS ELITE** for casino services featuring stored value membership cars for redeeming cash, discounts, and other benefits (Reg. No. 3,622,985) in International Class 41. |
| g) | **IP REWARDS PREMIUM** for casino services featuring stored value membership cars for redeeming cash, discounts, and other benefits (Reg. No. 3,622,986) in International Class 41. |
| h) | **IP CASINO RESORT SPA MORE THAN YOU EXPECT!** for casino services and hotel, restaurant and bar services (Reg. No. 3,549,359) in International Classes 41 and 43. |
| i) | **IP CASINO RESORT SPA** for hotel, restaurant and bar services; entertainment services in the nature of presenting live musical performances and casino gaming; casino services and casino players rewards program; spa services (Ser. No. 85,332,492) in International Classes 41, 43, and 44. |
| j) | **IP CASINO RESORT · SPA (and Design)** for hotel, restaurant and bar services; entertainment services in the nature of presenting live musical performances and casino gaming; casino services and casino players rewards program; spa services (Ser. No. 85,332,513) in International Classes 41, 43, and 44. |

13. Boyd and its predecessors in interest have protected the rights in the IP CASINO Mark by, among other things, asserting their rights against trademark and copyright infringers upon discovering infringing activity.

14. Boyd and its predecessors in interest have also invested substantial sums of money to advertise, promote and protect the IP CASINO Mark in print, broadcast and Internet media.

15. Additionally, Boyd and its predecessors in interest have made extensive use of the IP CASINO Mark on, among other things, signage, wearing apparel, souvenirs and promotional materials.

16. Since the Imperial Palace first opened in 1979 and the IP Casino opened in 1997, millions of visitors throughout the United States and the world have visited the Imperial Palace and IP Casino, which have continuously used the IP CASINO Mark, and numerous consumer products and promotional items bearing the IP CASINO Mark have been sold or otherwise distributed since that time.

17. Based on Boyd's trademark registrations, and it and its predecessors in interest's extensive use, Boyd owns the exclusive right to use the IP CASINO Mark in connection with casino and related services.

18. Through Boyd and its predecessors in interest's extensive use, the IP CASINO Mark has become distinctive and famous in the United States and around the world for casino and related services.

## DEFENDANT'S INFRINGING ACTIVITIES

19. On or about November 3, 1999, Defendant registered the <ipcasino.com> Internet domain name (the "Infringing Domain Name").

20. Some time after registration, Defendant directed the Infringing Domain Name to a website that allows users to gamble online ("Infringing Website"). The Infringing Domain Name is currently registered through GoDaddy, a registrar for domain names.

21. The home page of the Infringing Website directs users to the online casino called Casino Lux.

22. The Casino Lux page of the Infringing Website is available in multiple languages, including English, and allows users to download software from the website located at <casinolux.com>.

23. Once users download the software, they can participate in live online gaming, including slots, keno, poker and many other casino-style games for profit offered at brick-and-mortar gaming establishments such as the Imperial Palace and IP Casino

24. Boyd recently became aware of Defendant's activities, in December 2011.

25. The Infringing Domain Name wholly consists of the famous IP CASINO Mark and .com, the generic top-level domain.

26. The IP CASINO Mark had been distinctive and famous for almost two decades at the time Defendant registered the Infringing Domain Name.

27. Defendant did not obtain Boyd or its predecessors in interest's consent or authorization to register a domain name consisting of the IP CASINO Mark.

28. Upon information and belief, by registering and using a domain name containing the IP CASINO Mark, Defendant was and is attempting to trade on the goodwill in the IP CASINO Mark.

29. Upon information and belief, by registering and using a domain name consisting of the IP CASINO Mark, and by using the same to direct users to an online gaming website, Defendant was and is attempting to create an association Infringing Domain Name, the Infringing Website and casino services associated with the IP CASINO Mark.

30. Upon information and belief, by registering and using a domain name containing the IP CASINO Mark, Defendant was and is intending to entice customers away from visiting the Imperial Palace and IP Casino using the IP CASINO name and direct users to instead gamble through the Infringing Website in a manner that could harm the goodwill represented by the IP CASINO Mark.

31. Upon information and belief, Defendant registered the Infringing Domain Name with the bad faith intent to profit from the IP CASINO Mark.

32. Upon information and belief, Defendant has no trademark or other intellectual property rights in the IP CASINO Mark.

33. Upon information and belief, Defendant has never used the Infringing Domain Name in connection with the bona fide offering of any goods or services.

34. Upon information and belief, Defendant did not believe or have reasonable grounds to believe that its use of the Infringing Domain Name was a fair use or otherwise lawful.

### COUNT I

### (Cybersquatting – 15 U.S.C. § 1125(d))

35. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

36. Defendant has registered, trafficked in, and/or used a domain name that is confusingly similar to and/or dilutive of the IP CASINO Mark.

37. The IP CASINO Mark was distinctive and/or famous at the time Defendant registered the Infringing Domain Name.

38. Upon information and belief, Defendant has and/or had a bad faith intent to profit from the IP CASINO Mark.

39. As a direct and proximate result of Defendant's infringement, Boyd and its predecessors in interest have suffered, and Boyd will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## COUNT II

### (Federal Trademark Infringement – 15 U.S.C. § 1114)

40. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

41. By registering a domain name containing the IP CASINO Mark and using the same to direct users to an online gaming website, Defendant intentionally and knowingly used and continues to use in commerce reproductions, counterfeits, copies and/or colorable imitations of Boyd's trademark in connection with the sale, offering for sale, or advertising of services in a manner that is likely to cause confusion or mistake, or to deceive consumers as to an affiliation, connection, or association with Boyd and/or its predecessors in interest.

42. Defendant's use of a domain name containing the IP CASINO Mark has created a likelihood of confusion among consumers who may falsely believe that the Infringing Domain Name and Infringing Website is associated with the Imperial Palace or IP Casino or that Boyd or its predecessors in interest have sponsored or approved of Defendant's services or commercial activities.

43. Defendant's use of a domain name containing the IP CASINO Mark is also likely to cause initial interest confusion.

44. Defendant's continued and knowing use of the IP CASINO Mark without Boyd or its predecessors in interest's consent or authorization constitutes intentional infringement of

Boyd's federal registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

45. As a direct and proximate result of Defendant's infringement, Boyd and its predecessors in interest have suffered, and Boyd will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### COUNT III

**(Unfair Competition: False Designation of Origin – 15 U.S.C. § 1125(a)(1)(A))**

46. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

47. Defendant's use of a domain name that is confusingly similar to the IP CASINO Mark constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about Defendant's services and commercial activities, in violation of 15 U.S.C. § 1125(a)(1)(A).

48. Defendant's actions have created a likelihood of confusion among consumers who will falsely believe that the services Defendant offers through the Infringing Website are produced by, or affiliated or associated with, Boyd or its predecessors in interest, when in fact they are not.

49. Upon information and belief, Defendant acted knowingly, deliberately, and willfully with the intent to trade on Boyd and its predecessors in interest's reputation.

50. Defendant's conduct is willful, wanton and egregious.

51. As a direct and proximate result of Defendant's infringement, Boyd and its predecessors in interest have suffered, and Boyd will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

### COUNT IV

**(Federal Trademark Dilution –15 U.S.C. § 1125(c))**

52. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

53. The IP CASINO Mark is inherently distinctive.

54. Based on Boyd and its predecessors in interest's continuous and extensive use of the IP CASINO Mark, the IP CASINO Mark is entitled to be recognized as famous under 15 U.S.C. § 1125(c).

55. Defendant began using, in commerce, a domain name containing the IP CASINO Mark, decades after the IP CASINO Mark became famous.

56. Defendant's unauthorized use of a domain name that is confusingly similar to the IP CASINO Mark has and will cause dilution of the distinctive quality of the IP CASINO Mark and the goodwill associated with it, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57. Upon information and belief, Defendant's actions were willful in nature, in that Defendant willfully intended to trade on Boyd and its predecessors in interest's reputation or to dilute the IP CASINO Mark.

58. As a direct and proximate result of Defendant's infringement, Boyd and its predecessors in interest have suffered, and Boyd will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## COUNT V

### (Common Law Trademark Infringement)

59. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

60. By virtue of having used and continuing to use the IP CASINO Mark, Boyd and its predecessors in interest have acquired common law trademark rights in the mark.

61. Defendant's use of a domain name containing the IP CASINO Mark infringes upon Boyd and its predecessors in interest's common law trademark rights in the IP CASINO Mark, and is likely to cause confusion, mistake, or deception among consumers, who will believe that the online gaming services Defendant offers through the Infringing Website originate from, are affiliated with, or are endorsed by Boyd or its predecessors in interest, when, in fact, they are not.

62. As a direct and proximate result of Defendant's infringement, Boyd and its predecessors in interest have suffered, and Boyd will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

## COUNT VI

### (Common Law Intentional Interference with Prospective Economic Advantage)

63. Boyd incorporates the allegations in the preceding paragraphs as if fully set forth herein.

64. Upon information and belief, at and since the time Defendant began using the IP CASINO Mark, Defendant knew and has known that Boyd and its predecessors in interest are in the business of providing casino services.

65. Upon information and belief, Defendant committed acts intended or designed to disrupt Boyd and its predecessors in interest's prospective economic advantage arising from advertising and/or providing these services.

66. Defendant's actions have disrupted or are intended to disrupt Boyd and its predecessors in interest's business by, among other things, enticing customers away from visiting the Imperial Palace and IP Casino using the IP CASINO Mark and directing users to instead gamble through the Infringing Website.

67. Defendant has no legal right, privilege or justification for this conduct.

68. As a direct and proximate result of Defendant's infringement, Boyd and its predecessors in interest have suffered, and Boyd will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

69. Based on the intentional, willful and malicious nature of Defendant's actions, Boyd is entitled to recover monetary damages, exemplary or punitive damages and reasonable attorneys' fees and costs incurred in connection with this action.

### PRAYER FOR RELIEF

WHEREFORE, Boyd respectfully prays that the Court grant the following relief:

A. A preliminary and permanent injunction prohibiting Defendant, Defendant's respective officers, agents, servants, employees and/or all persons acting in concert or

participation with Defendant, from: (1) using the IP CASINO Mark or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any purpose whatsoever (including, but not limited to, on websites, in domain names, in hidden text and metatags); and (2) registering or trafficking in any domain names containing the IP CASINO Mark or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs;

B.  A permanent injunction requiring the current domain name registrar to transfer the <ipcasino.com> Internet domain name to Boyd;

C.  An award of compensatory, consequential, statutory, exemplary, and/or punitive damages to Boyd in an amount to be determined at trial;

D.  An award of interest, costs and attorneys' fees incurred by Boyd in prosecuting this action pursuant to 15 U.S.C. § 117(a)(3); and

E.  All other relief to which Boyd is entitled.

DATED this 5th day of January, 2012.         Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Laura B.
Tamara Beatty Peterson (Nevada Bar No. 5218)
Laura E. Bielinski (Nevada Bar No. 10516)
Joanna M. Myers (Nevada Bar No. 12048)
100 City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614

Attorneys for Plaintiff
BOYD GAMING CORPORATION