1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8

| | |
|---|---|
| BOYD GAMING CORPORATION, | 2:12-CV-16 JCM (CWH) |
| Plaintiff, | |
| v. | |
| KING ZULU, LLC, | |
| Defendant. | |

14
15

**ORDER**

16   Presently before the court is plaintiff Boyd Gaming Corporation's motion for default judgment

17   against defendant King Zulu, LLC. (Doc. # 21). Plaintiff's also request the court to release bond.

18   (Doc. # 22).

19   **I.    Background**

20          On January 5, 2012, plaintiff filed a complaint in this court alleging violations for (1)

21   cybersquatting under 15 U.S.C. § 1125(d), (2) trademark infringement under 15 U.S.C. § 1114, (3)

22   unfair competition under 15 U.S.C. § 1125(a), (4) trademark dilution under 15 U.S.C. § 1125(c), (5)

23   common law trademark infringement, and (6) common law intentional interference with prospective

24   economic advantage. (Doc. # 1). On January 20, 2012, the court granted plaintiff's motion for a

25   temporary retraining order. (Doc. # 9). On January 23, 2012, plaintiff posted a $100 bond. (Docs.

26   # 10 and 14). On February 3, 2012, the court granted plaintiff a preliminary injunction. (Docs. # 15

27   and 16).

28

**James C. Mahan**
**U.S. District Judge**

1   Defendant was timely served (doc. # 18); however, defendant has failed to answer or
2   otherwise respond to plaintiff's complaint despite being on notice of plaintiff's claims against it
3   (doc. # 6:21-22; *see* docket generally). On March 23, 2012, plaintiff filed a motion for entry of
4   default against defendant. (Doc. # 19). On March 26, 2012,  the clerk's office entered default as to
5   defendant. (Doc. # 20).

6   **II.     Discussion**

7        Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment
8   for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by
9   affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Federal Rule
10  of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party
11  seeking default applies to the clerk of the court as required by subsection (a) of this rule." FED. R.
12  CIV. P. 55(b)(2).

13       On March 26, 2012, the clerk entered default against defendant for its failure to plead or
14  otherwise defend the instant lawsuit. (Doc. # 20). Pursuant to Federal Rule of Civil Procedure
15  55(b)(2), plaintiff now asks this court to enter default against defendant.

16                          **A.     Default Judgement**

17       The choice whether to enter a default judgment lies within the discretion of the trial court.
18  *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). In the determination of whether to grant a
19  default judgment, the trial court should consider the seven factors articulated in *Eitel v. McCool*, 782
20  F.2d 1470, 1471-72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to plaintiff, (2)
21  the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5)
22  the possibility of a dispute concerning material facts, (6) whether default was due to excusable
23  neglect, and (7) the policy favoring a decision on the merits. *Id.* In applying these *Eitel* factors, "the
24  factual allegations of the complaint, except those relating to the amount of damages, will be taken
25  as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see* FED.R.CIV.P. 8(d).

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    The first *Eitel* factor weighs in favor of granting plaintiff's motion because plaintiff has no

2    other recourse to recoup damages caused by defendant and prevent defendant from further

3    infringement. *See Adobe Sys. Inc. v. Marmeletos*, 2009 WL 1034143 at *3 (N.D. Cal. Apr. 16, 2009).

4    Defendant has not answered or otherwise responded to the complaint. If plaintiff's motion for default

5    judgment is not granted, plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc.*

6    *v. Cal. Security Cans*, 283 F.Supp.2d 1127, 1177 (C.D. Cal. 2002).

7    The second and third *Eitel* factors favor a default judgment where the claims are meritorious

8    and the complaint sufficiently states a claim for relief. *See Cal. Security Cans*, 238 F.Supp.2d at

9    1175; *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978)). Plaintiff's complaint states

10   plausible claims for relief for multiple violations of the Lanham Act. (*See* doc. # 1). Further,

11   plaintiff's complaint is well pleaded as it identifies defendant, enumerates plaintiff's rights in its

12   trademarks, describes the steps defendant took to infringe upon its trademark, and sets forth causes

13   of action for defendant's conduct. (Doc. # 1).

14   Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to

15   the seriousness of defendant's conduct. *See Cal. Security Cans*, 238 F.Supp.2d at 1176. The sum of

16   money sought is relatively large, over $100,000; however, the relief sought is appropriate under the

17   Anti-Cybersquatting Consumer Protection Act (ACPA). This factor weighs neither in favor nor

18   against granting default judgment.

19   The fifth *Eitel* factor also favors default judgment. Given the sufficiency of the complaint,

20   evidence of plaintiff's trademark registrations and defendant's infringement, and defendant's default,

21   "no genuine dispute of material facts would preclude granting [plaintiff's] motion." *Cal. Security*

22   *Cans,* 238 F.Supp.2d at 1177; *see Geddes,* 559 F.2d at 560.

23   Applying the sixth factor, the court cannot conclude that defendant's default is due to

24   excusable neglect. Defendant was properly served with summons and the complaint. (*See* doc. # 18).

25   Defendant's failure to respond or litigate this case cannot be attributable to excusable neglect. *United*

26   *States v. High Country Broadcasting Co., Inc.,* 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that it was

27

28

**James C. Mahan**
**U.S. District Judge**                                      - 3 -

1    "perfectly appropriate" for the district court to enter default judgment against a corporation that

2    failed to appear in the action through licensed counsel).

3         The final *Eitel* factor weighs against default judgment. "Cases should be decided upon their

4    merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. But the mere existence of Rule 55(b)

5    "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans,* 238 F.Supp.

6    at 1177 (citation omitted). Moreover, defendant's failure to answer or otherwise respond to the

7    complaint "makes a decision on the merits impractical, if not impossible." *Id.*

8         Having reviewed plaintiff's motion and evidence previously submitted in this case, and

9    having considered the *Eitel* factors as a whole, the court concludes that the entry of default judgment

10   is appropriate against defendant. The court now turns to the reasonableness of the damages and relief

11   sought in the default judgment.

12       **B.**     **Damages and Injunctive Relief**

13            **1.**     **Corrective Advertising**

14        Plaintiff seeks damages of $1,000 as compensation for corrective advertising. In the Ninth

15   Circuit, it is permissible for the court to award damages for prospective corrective advertising. *Adray*

16   *v. Adry-Mart, Inc*., 68 F.3d 362 (9th Cir. 1995), *amended*, 76 F.3d 984 (9th Cir. 1996). A plaintiff

17   need not show a specific measure of harm to its goodwill and reputation in order to recover

18   corrective damages. *Adray,* 76 F.3d at 988.

19        Plaintiff concedes the difficulty in ascertaining the damages plaintiff has suffered. (Doc. #

20   21, 21:27-28). Provided that plaintiff seeks a nominal amount of $1,000 in light of the uncertainty

21   of the actual damages suffered by plaintiff, the court finds this amount appropriate.

22            **2.**     **Statutory Damages**

23        Plaintiff also seeks damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d) for

24   plaintiffs prevailing on ACPA claims. Courts may award statutory damages for cybersquatting:

25       In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may
    elect, at any time before final judgment is rendered by the trial court, to recover,

26       instead of actual damages and profits, an award of statutory damages in an amount
    of not less than $1,000 and not more than $100,000 per domain name, as the court

27       considers just.

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1   15 U.S.C. § 1117(d). "[T]he court has wide discretion in determining the amount of statutory

2   damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus*

3   *Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). Plaintiff requests the court to send a clear

4   message that misappropriating famous trademarks with the bad faith intent to profit will not be

5   tolerated. (Doc. # 21, 15:12-15). Further plaintiff asserts that awarding the maximum statutory

6   amount would deter defendant from its ongoing, unlawful conduct.

7       Plaintiff provides the court with an array of other courts in this district that have awarded

8   statutory damages under ACPA with damages ranging from $1,000 to $1,100,000. While these cases

9   are not binding on the court, they are informative on the matter. Provided that plaintiff also seeks a

10  permanent injunction, the court finds that the maximum statutory award to effectuate deterrence

11  unwarranted here. However, the court finds damages in the amount of $10,000 appropriate.

12                          **3.     Injunctive Relief**

13      Plaintiff seeks a permanent injunction prohibiting defendant or its agents from engaging in

14  further acts of trademark infringement and a permanent transfer of the domain name. (Doc. # 16:6-

15  9). ACPA authorizes courts to transfer domain names to the owner of the mark. 15 U.S.C. §

16  1125(d)(1)(C). "Injunctive relief is the remedy of choice for trademark and unfair competition cases,

17  since there is no adequate remedy at law for the injury caused by defendants' continuing

18  infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988).

19      At the time plaintiff applied for injunctive relief, the domain name was registered to

20  defendant; however, the court granted plaintiff's motion for a preliminary injunction, transferring

21  the domain name to plaintiff pending the outcome of this case. Based on evidence of defendant's

22  infringement, the court finds that permanent transfer of the domain name appropriate.

23  **III.   Conclusion**

24      Accordingly,

25      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Boyd Gaming

26  Corporation's motion for default judgment (doc. # 21) and request to release bond (doc. # 22), be,

27  and the same hereby are, GRANTED.

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff be awarded judgment against defendant as follows:

1.    statutory damages in the amount of $10,000;

2.    damages for corrective advertising in the amount of $1,000;

3.    reasonable attorneys' fees;

4.    costs; and

5.    post-judgement interest on the principal sum at the statutory judgment rate from the entry of judgment until paid in full.

IT IS FURTHER ORDERED that defendant and its officers, agents, servants, employees and/or all persons acting in concert or participation with defendant are hereby permanently enjoined from:

1.    using the trademark IP CASINO ("IP CASINO Mark") or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any purpose whatsoever (including, but not limited to, on websites, on domain names, in hidden text and metatags); and

2.    registering or trafficking in any domain names containing the IP CASINO Mark or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs.

IT IS FURTHER ORDERED that registration of the domain name <ipcasino.com> shall be permanently transferred to plaintiff. The domain name registrar, Go Daddy, shall effectuate transfer.

IT IS FURTHER ORDERED that the clerk of the court shall refund plaintiff the $100 bond by plaintiff as security for the temporary retraining order and preliminary injunction entered in this case.

DATED October 25, 2012.

_____

**UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge

- 6 -